IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DEONDRAY JOHNSON, #L3081                                                    PETITIONER

V.                                                      CIVIL ACTION NO.1:06CV20-GHD-JAD

CHRISTOPHER EPPS, ET AL.                                                   RESPONDENTS

REPORT AND RECOMMENDATION

Deondray Johnson was convicted of capital murder in the Circuit Court of Attala County, Mississippi and sentenced to life without possibility of parole. His conviction was affirmed on appeal by the Mississippi Court of Appeals. He filed for and was denied post-conviction relief in the Mississippi Supreme Court. He has timely filed a petition for habeas corpus in this court. The file and record has been reviewed.

Summary of the Record

Dorothy Jordan owned and operated Dot's Bar and Grill in Carroll County, Mississippi. Her home was adjacent to her business. On January 21, 2001, Deondray Johnson, his cousin Lawrence Branch, and his mother Janie Johnson were all at Dot's Bar and Grill. The petitioner and Branch left to take other patrons home. When they failed to reappear at the bar, Dorothy Jordan took Johnson's mother and another member of the party home. When Jordan returned to her residence, she was beaten to death with a wooden object. It appeared that she had been attacked and beaten in the yard and then moved into her home, where her body was discovered the following afternoon.

Johnson and Branch lived next door to one another. Branch's father turned a black plastic garbage bag into police, reporting it had been found in Johnson's yard. It contained currency, food stamps and a revolver that belonged to the victim. Cash that witnesses testified the victim kept in a bank bag was not found. Johnson's fingerprints were on one of the food stamps. When he was

arrested, deputies noted what appeared to be a blood spatter on his pants and shoes. Johnson admitted he was wearing the pants and shoes on the night Jordan was murdered. Analysis showed the spatter was blood. The DNA profile showed it was the victim's blood. Wood found at Johnson's home was similar to and consistent with wood at the scene that was identified as the murder weapon. Johnson gave one statement to law enforcement saying that he and Branch had been together all evening returning to their homes in the early morning hours. In a subsequent statement he told law enforcement that Branch had probably taken the wood used to kill the victim from his home.

Johnson was arrested on January 23, 2001, and indicted for murder on April 26, 2001. He was arraigned on May 1, 2001. At an October 24, 2001, motions hearing, Johnson's attorney suggested that Johnson should be tried after his co-defendant Lawrence Branch. At that hearing, the trial judge set both cases for trial in March 2002, leaving it to the state to elect which case to bring to trial first. The state elected to do as Johnson's lawyer had suggested–to try Branch first. On October 30, 2001, Johnson filed a motion for speedy trial, but the motion was not set for hearing.

Johnson's trial, because it was to be the second trial, was delayed when Branch's trial had to be delayed. Branch's trial was delayed first when requested a mental evaluation on February 12, 2002, and later when Branch's attorney requested a continuance. Johnson did not protest the continuances; did not request that he proceed to trial ahead of Branch; nor call his speedy trial motion for hearing. Branch's trial was rescheduled for May 20, 2002, and three days later he was convicted and sentenced to death. Johnson's trial was scheduled immediately after his cousin's, but on May 29, 2002, Johnson requested a motion for change of venue, which was granted. The trial

was set for September 30, 2002. On September 26, 2002, Johnson moved to dismiss for violation of his right to a speedy trial. This motion was denied. Johnson was tried and convicted.

## Standard of Review

Johnson's petition sets forth five grounds for relief. Because each has been considered and ruled upon on the merits by the state courts, either on direct appeal or on motion for post-conviction relief, each is reviewed in accordance within the limited confines of the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) and *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389(2000).

### Ground One

Johnson urges this court to find that the verdict is against the weight of the evidence. The respondents correctly note that it is not the province of this court to consider the weight of the evidence *Young v. Kemp*, 760 F. 2d 1097 (11th Cir. 1985). The court is limited to determining whether the evidence is constitutionally sufficient. The evidence in this record, as summarized above, is more than adequate constitutionally to support the conviction.

Johnson contends that the evidence absolutely vindicates him in the death. His argument is a rehash of the rather clever defense fashioned by his attorney but rejected by the jury. Johnson came home to his mother's house around 5:00 a.m. The victim was discovered dead in her home at nearly 5:00 p.m. the next afternoon. She was found face down on the floor. When she was rolled over, onto her back by the coroner, some blood ran across her cheek. Dr. Steven Hayne, the pathologist, testified that livor mortis, the pooling of blood in a decedent's tissues would become fixed at approximately eight to ten hours post mortem. When livor mortis becomes fixed, the blood cannot be pushed out of the tissues. By Johnson's estimation, this places Dot Jordan's time of death after

3

his return home and exonerates him. It is not the iron clad alibi for Johnson that he claims. There was no testimony establishing the victim's time of death, and it was not necessary to sustain a conviction. This evidence and argument was put before the jury and rejected by them. Considering all the other evidence of his guilt, the petitioner's conviction is, on review of the record, constitutionally sufficient to support the conviction. This claim is without merit.

Ineffective Assistance of Counsel

Johnson challenges the effectiveness of his attorney in Grounds Two through Four. To establish ineffective assistance of counsel, he must show, " (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense." *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674 (1984). The deficiency determination is not unguided. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. The court is not to analyze counsel's actions in hindsight, but rather to judge his or her decisions in a "highly deferential" manner. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994); quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. If counsel's performance is deemed to have been deficient, "then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). Each of these claims is addressed individually below.

### Ground Two

Johnson argues that his attorney failed to get illegally seized evidence suppressed. Johnson claims that he did not consent to the search of his residence and the yard around it. He admits, however, that he signed the consent form. Johnson claims that he loudly protested and refused to consent to the search, while it was being conducted. He claims that law enforcement must have duped him into signing the consent when he was signing Miranda forms. Deputy Sheriff Michael Spellman and Deputy Sheriff Michael Peeples both testified that Johnson consented to the search. The search turned up pieces of wood that were similar to the wood identified as the murder weapon. The record is consistent with a subsequent regret for having consented. Even assuming arguendo, that counsel should have moved to suppress, there appears to be virtually no chance of succeeding on the motion. Additionally, the fruits of the search are not particularly damning. The search of the interior of the home turned up nothing incriminating, which would assist the defense. The presence of wood in the yard of the home, similar to the wood used to beat the victim, at Johnson's house, when his co-defendant lived next door, is not by itself particularly incriminating. Johnson has not established either of the two *Strickland* prongs in this claim.

### Ground Three

Johnson alleges that his lawyer was ineffective in failing to get evidence which had been "tampered" with suppressed. According to Johnson, there is a State Crime Lab report that shows the State Crime Lab found no blood on Johnson's jeans or shoes. Apparently this claim is an act of imagination on Johnson's part, as the record contains no such report and he has not produced any such report. The only documentation in the record is a request for examination of the jeans and shoes for the presence of blood from local law enforcement, after they detected what they believed

to be blood spatters. There is no evidence that anyone at the State Crime Lab attempted such an examination. Rather that examination was performed by the Reliagene lab, which performed the DNA testing. The factual basis for this alleged claim not being in the record, it cannot be said that Johnson's counsel was deficient or that Johnson was prejudiced by such conduct.

Ground Four

Johnson continues the baseless claims of Ground Three to allege the deficient failure of his attorney to confront Amy Winters regarding the absence of blood on the jeans and shoes when it was examined at the State Crime Lab. Amy Winters testified that she received various items of evidence and that she prepared the blood samples on cards used by Reliagene. There is nothing in the record to establish that she conducted any examination of the jeans or shoes. This claim is without merit.

Ground Five

Johnson alleges that the trial court erred in failing to dismiss for violation of his state statutory and constitutional rights to a speedy trial. This court cannot act on any claimed error of state law, since this presents no constitutional issue on its face. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L.Ed.2d 306 (1993) (O'Connor, J. concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). *Id* at 348-9, 113 S. Ct at 2121. Habeas corpus jurisdiction is invoked with such a claim solely on due process grounds, if at all. "[E]rrors of state law, ... are not cognizable in habeas corpus as such." *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1992)(citing *Estelle v McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L.Ed.2d 166 (1991)at 1458 (citing *Lisenba v. California*, 314 U.S. 219, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166 (1941).

The only pertinent question remaining is whether the state court unreasonably applied the test of *Barker v. Wingo,* 405 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101(1972). The Mississippi Court of Appeals considered each of the Barker factors and applied them to the undisputed facts in the case. The Court of Appeals found that the length of delay was presumptively prejudicial. It found that there was several months of delay attributable to the prosecution in getting evidence submitted for DNA analysis, but that the bulk of the delay was occasioned by the prosecution's pursuit of the Branch case as the first case, a delay not charged to the prosecution. The court considered the failure of Johnson to pursue a speedy trial motion and also found that Johnson had not been prejudiced by the delay. Johnson alleges he was prejudiced by the death of a witness and that he suffered anxiety from being kept in solitary confinement pending trial. The witness, who had a felony record, was at the victim's place of business the night she was killed. There is no showing regarding any potential testimony. The Mississippi Court of Appeals concluded that Johnson's federal constitutional right to a speedy trial had not been violated. This court can disturb that finding only if it is not merely erroneous, but unreasonable.

Contrasting the facts of this case with those in *Wingo* demonstrates the lack of merit in this claim. In *Wingo,* there was a five year delay in bringing the defendant, Barker, to trial for murder for the beating deaths of an elderly couple. Deondray Johnson,by contrast, only suffered a twenty month, two week delay. The prosecution in *Wingo* decided to prosecute the defendant's co-indictee, Manning, first because they thought they had the better case Manning. Similarly since, Johnson's co-indictee had confessed, the prosecution, in this case, undoubtedly felt the Branch case was the stronger case. Unlike the defendant in *Wingo*, Johnson, through his lawyer asked to go to trial after his cohort in crime.

In *Wingo*, there were a series of sixteen continuances in the defendant's most of which were granted without objection. Johnson's trial was effectively continued only three times-twice because of delays in the first case- and once when his lawyer prudently sought a change of venue. The change of venue was sought to avoid being tried back-to-back with his cousin, after the cousin was given the death penalty. After Johnson's and Branch's trial were set, the trials were delayed by the cousin's case only delayed from March of 2002 until May 2002. The rest of the delay to September, 2002, was due to Johnson's motion for a change of venue. By comparison, Barker waited for trial while his accomplice was tried six times, including trials resulting in two hung juries, two convictions reversed on two separate successful appeals and finally two separate trials for each of the two deaths resulting in two convictions of the co-indictee, Manning. Only after these extensive proceedings with Manning did the prosecution turn its attention to Barker.

The *Wingo* defendant did not request a speedy trial for the first three and a half years. Deondray Johnson filed but did not pursue the speedy trial motion. Barker, unlike Johnson, also suffered several continuances, even after the prosecution finally got Manning convicted, because of the illness of a key prosecution witness. Barker, like Johnson, suffered no prejudice from the delay. If Barker's right to a speedy trial were not violated, it cannot be reasonably posited that Johnson's rights were violated. There was substantially less delay and substantially more of the delay fairly chargeable to the defendant in this case. Given both the similarities and differences between the facts in *Wingo* and those in Johnson, the Mississippi Court of Appeals conclusion that Johnson's speedy rights were not violated appears to be mandated by *Wingo*.

Having reviewed all claimed grounds and finding each to be without merit, the undersigned recommends that the petition be dismissed with prejudice.

8

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.2(D) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Petitioner is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date. Petitioner is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 12th day of February, 2007.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE